GOFF, Circuit Judge.
This is a writ of error to the circuit court of the United States for the Western district of North Carolina. The defendant in error instituted its suit in said court against the plaintiff in error, demanding judgment for the possession of a certain tract of land, and damages for its detention. A like suit was also brought in said court by the defendant in error against William Cuthbertson and a number of others for the recovery of the possession of said land, and for damages. These suits were brought under the provisions of the statute of the state of North Carolina, and the complaints filed therein alleged the ownership in fee of the defendant in error in two adjoining tracts of land, situated in the counties of Mitchell and Watauga, in the state of North Carolina, described in the complaints with great particularity, but not necessary to be fully set forth at this time. It was alleged in the complaints that the defendants named therein were wrongfully in the possession of said land, and that they were unlawfully withholding the same from the plaintiff; that they were receiving the rents and profits thereof, and destroying and removing the timber, greatly to the damage of the true owner. Judgment for the possession of the land and for damages was prayed for under the provisions of the statute mentioned. The defendants to said suits duly appeared and filed their answers in both cases, in which they denied each and every of the allegations in said complaints contained, and they demanded judgments that the plaintiff in said suits take nothing by virtue of its writs, and that they, the said defendants, recover their costs. The court then entered an order directing that for the purposes of the trial of the plaintiff’s title, and the location of the grants under which the plaintiff claims, the said two cases should be consolidated and tried as one cause, each defendant to be entitled to a separate issue upon his own title after the determination of the issue as to boundary and location of the plaintiff’s title. The land sued for in both cases was the same, and the contention was over its true location. The defendant in error claimed that the land was located to the south of the Wilkes county line, while the plaintiff in error insisted that if the land could be located at all, all of it would lie to the north of that line, and that he had never been in the possession of any of the land situated north of said line.
The plaintiff below claimed title to the land in controversy under two deeds, one made by J. Evans Brown, and the other by Dwight M. Lowry and wife, and by certain other conveyances and devises, by *230 which it connected itself with a grant made by the state of North Carolina to one William Cathcart, dated the 20th of July, 1796, and also by reason of continuous, open, notorious, and uninterrupted adverse possession thereof by it and those under whom it claimed for 20 years and more prior to the commencement of said suits, and by reason of continuous, open, notorious, and uninterrupted adverse possession for 7 years and more under color of title thereto, prior to the commencement of said suits. The defendants below insisted that the grant made by the state of North Carolina to William Cathcart was not so located as to include the land claimed by them; that the plaintiff below could not connect itself by due and proper conveyances with said grant; and that it could not show title by adverse possession, either with or without color of title. The cases so consolidated were, without objection, tried together at the June term, 1896, of said court at Asheville. During the trial the plaintiff below offered in evidence a copy of the said grant to William Cathcart, and also certain deeds, wills, and other evidence, for the purpose of showing a complete chain of title from the state to the plaintiff, and also to establish title by adverse possession, both with and without color of title. The defendants below offered no evidence at the trial, and the issues submitted to the jury by the court were: First. Has the plaintiff shown title to the land embraced in the grant he claims, to the 59,000-acre grant, as therein described? Second. Is the tract described in the grant—the 59,000-acre tract—within the black lines on the official plat in evidence in this case? The jury answered both of the issues so submitted in the affirmative, and on this finding the court entered judgment against the defendants. A writ of error was then sued out, and the assignments of error, 19 in number as shown in the record, are now before us for consideration. However, the plaintiff in error has abandoned all of said assignments except five, which have been fully discussed by counsel.
The first relates to the action of the court in admitting as evidence a copy of the last will and testament of William Cathcart, over the objection of the defendant below. The defendants insisted that the probate thereof “did not show affirmatively that the said will was executed in accordance with the requirements of the laws of North Carolina,” and that, therefore, it was not proper evidence. In disposing of this objection it is well to consider the purpose for which the said copy was offered. It was introduced to connect the devisees therein named with a suit in equity that had been instituted and prosecuted to final decree in the court of equity of Buncombe county, N. C., some years before, the object of which suit was to secure the sale of the lands described in the grant for 59,000 acres from the state of North Carolina to William Cathcart, and of other lands in which the heirs at law of said Cathcart were interested, all of whom were parties thereto, as were also the devisees mentioned in said will, or their heirs. Therefore all the parties having an interest in said lands were before the court, which decreed the sale of the same, appointed a commissioner to make such sale, which was duly made, reported, and confirmed. So it appears that the devisees named in the will of William Cathcart were also of the heirs at law of said decedent, and that *231 they were before the court that directed the sale of the land so devised, and now claimed to be in the possession of the defendants below. Such being the case, we do not see why it was necessary to offer the copy of said will to the jury, and it is also evident that if we should exclude the same, or hold that the court erred in admitting it, nevertheless the plaintiff in error has not been prejudiced, because it plainly appears from the record that the said William Cathcart only owned an undivided one-fourth interest in the lands, and it is not questioned but that the plaintiff below offered a chain of title by which it held the undivided three-fourths of said lands which had been conveyed to the plaintiff by those who were tenants in common with Cathcart; and so, even if the title of Cathcart did not pass by his will, or by the equity suit mentioned, nevertheless the plaintiff, as tenant in common with the heirs of Cathcart, could have maintained in Eorth Carolina its suit, and could have recovered, in its own behalf and for the benefit of its co-tenants, the entire tract of land. Brittain v. Daniels, 94 N. C. 781; Moody v. Johnson, 112 N. C. 810, 17 S. E. 579; Foster v. Hackett, 112 N. C. 540, 17 S. E. 426. Still we are of opinion that there was no error in the ruling of the court below, as the presumption arises that the requirements of the statute had been complied with, and that the evidence given when the will was offered for probate was of such character as to authorize its admission to record. The point insisted on by plaintiff in error concerning the record so offered in evidence has, in effect, been decided against him by the supreme court of North Carolina. Moody v. Johnson, 112 N. C. 798, 17 S. E. 578, and cases cited.
The next assignment of error is as to the action of the court in permitting the witness A. C. Avery to testify concerning the declarations of one W. J. Brown referring to the relationship that existed between the said Cathcart and Dale, the Latimers, and other parties to the partition suit in the court of equity in Buncombe county, E. C., and in the suit in the circuit court of the United States for the Eastern district of that state. The objection was that the proposed evidence was hearsay, and that it did not purport to come from a member of the family with which the relationship was said to have existed. Rule 11 (21 C. C. A. cxii.. 78 Fed. cxii.) of this court requires that, when the error alleged is as to the admission or to the rejection of evidence, the assignment of errors shall quote the full substance of the evidence admitted or rejected. Eo effort has been made to comply with this rule, so far as the assignment of error we are now considering is concerned; the evidence admitted, nor its substance, not being set forth; consequently the questions referring thereto as discussed by counsel will not be disposed of by this court.
During the trial the plaintiff below offered in evidence a bond for title or a contract to convey a portion of the 59,000 acres of land in controversy, made to L. Trivett by John E. Brown, through his attorney, W. J. Brown, dated in 1881, a copy of which is made a part of the bill of exceptions. The same was offered for the purpose of showing possession of the land by said Trivett, and that he and those claiming under him had held such possession *232 continuously from the date of said contract. The defendant below objected to the introduction of the same, because “the paper has no legal effect, as it has no description.” The objection was overruled, and the bond or contract was admitted in evidence, and such admission is now assigned as error. The position taken by counsel for the plaintiff in error during the argument of this cause before this court that the said paper was offered as color of title is not sustained by the record, is in fact refuted by the bill of exceptions, which certifies that its purpose was, in connection with other evidence, to show possession of the land by said Trivett and those claiming under him “from the date of the contract ever since.” The only objection presented for the consideration of the trial judge was that the paper had no legal effect, for the reason that it had no description. No other point will be considered by this court, as the court below ruled on that alone.. An appellate court will only pass upon those questions as to which a foundation was laid by a specific objection on which the court below ruled, and concerning which an exception was not only noted at the time, but fully set forth in the bill of exceptions. Turner v. Yates, 16 How. 14; Hanna v. Maas, 122 U. S. 26, 7 Sup. Ct. 1055; Improvement Co. v. Frari, 8 U. S. App. 444, 7 C. C. A. 149, and 58 Fed. 171.
On the question of possession, the contract for the sale of the land, accompanied by oral testimonv showing occupation thereunder, was clearly proper. Such evidence was admitted by the court as competent for the jury to consider, its weight being left for their determination. The evidence of Trivett as to his possession under said contract, as well as of others who testified concerning the time and character of the same, was offered, admitted, and not excepted to. Why the paper under which he entered and so held was not admissible it is difficult to conceive, as the evidence connected his possession with the same. The description was sufficient, as it located the land on a certain ridge in a particular county, designated as a square of 100 acres, and alludes to it as the same land that had been sold to one Timothy Price, and by him transferred to Trivett. Under such circumstances parol evidence as to possession and identity was properly heard by the jury.
The plaintiff below having closed its case to the jury, the defendant introduced no evidence, but tendered the following issues as proper to be submitted to the jury: (1) Is the plaintiff the owner and entitled to possession of the land described in the pleadings? (2) Is the defendant in the unlawful possession of said lands? (3) What damage has the plaintiff sustained? The court refused to submit such issues, and presented the following for the finding of the jury thereon: (1) Has the plaintiff shown title to the land embraced in the grant he claims to the 59,000-acre grant as therein described? (2) Is the tract described in the grant—the 59,000-acre tract—within the black lines on the official plat in evidence in this case? To this the plaintiff in error objected. In order to fully comprehend and properly dispose of the questions raised *233 by this objection, it is necessary that we understand what the record discloses concerning the same. In the order consolidating the cases, we find this language:
“It is ordered by the court that, for the purpose of the trial of the plaintiff’s title and the location of the grants under which the plaintiff claims, these two causes be consolidated, and tried as one cause, each defendant being entitled to a separate issue upon his own title after the determination of the issue as to boundary and location of plaintiff’s title.”
The plaintiff below expressly waived damages, and consequently it was not necessary to submit the issue relating to that matter asked for by the defendant below, and the court very properly declined to do so. As to the question of possession, it appears that it was admitted during the trial that the plaintiff in error was in possession of parts of the land in controversy.- The question of possession was thus eliminated. It is evident from the record that the plaintiff below claimed to own two adjoining tracts-of land, and that it insisted that they were located inside the lines of the 59,000-acre grant, which it claimed was located as shown by the black lines laid down on the official map used by the jury. The real controversy was, therefore, as to the true location of the 59,000-acre grant. If the jury found that the land was located as claimed by the plaintiff, the defendant admitting possession, and damages being waived, then the only further finding required was as to the title; and, as we see the case, the answer of the jury would have been the same to either the issue tendered by the defendant or the one submitted by the court, relating to the question of ownership and title. No particular form is required of the issues to be submitted to a jury, but it is essential that the real matters in controversy raised by the pleadings should be fairly presented. Cuthbertson v. Insurance Co., 96 N. 0. 480, 2 S. E. 258; Code N. C. §§ 395, 396. Of necessity, these issues are to a great extent left to the discretion of the presiding judge. Emery v. Railroad Co., 102 N. C. 209, 9 S. E. 139; State v. Mitchell, 102 N. C. 347, 9 S. E. 702; Lineberger v. Tidwell, 104 N. C. 506, 10 S. E. 758; Everett v. Williamson, 107 N. C. 204, 12 S. E. 187; Bradsher v. Hightower, 118 N. C. 399, 24 S. E. 120. That the court below wisely exercised the discretion reposed in it under the North Carolina statutes and practice in submitting the issues to the jury is fully shown by all the facts offered to the jury and recited in the record, but not deemed essential to be now referred to in detail.
The other assignments of error remaining to be disposed of are those relating to the refusal of the court below to give certain instructions asked for by the defendant, and to the charge of the court to the jury. As to these assignments, we are compelled to sustain the position assumed by the counsel for the defendant in error, that this court cannot consider the same. The exceptions and the assignments referring to the charge are to the same as a whole, which is specially prohibited by rule 10 of this court. 21 C. C. A. cxi., 78 Fed. cxi. So far as the bill of exceptions is concerned, there is an absolute disregard of the requirement that the *234 several matters of law excepted to, and those only, shall be inserted, and the effort to remedy this in the assignments of error will not be permitted. Nor does it appear that the exceptions to particular parts of the charge, referred to in the assignments of error, were made and the attention of the court called to them at the time the charge was given. The reasons requiring this to be done have been so frequently stated by the courts that we must decline to again enumerate them. Van Gunden v. Iron Co., 8 13. S. App. 229, 3 C. C. A. 294, and 52 Fed. 838; Improvement Co. v. Frari, 8 U. S. App. 444, 7 C. C. A. 149, and 58 Fed. 171. So far as the assignments relate to instructions asked for and refused, they neither quote nor refer to the evidence that shows the relevancy of the propositions of law propounded by such instructions, and therefore we presume that no such testimony was before the jury, in which event it is evident that the court below did not err in refusing to give them. Improvement Co. v. Frari, supra. The bill of exceptions in this case does not show affirmatively the errors alleged, and that they were prejudicial; nor does it show that timely objections were made, and the grounds thereof .clearly stated, so far, at least, as the question relating to the refusal of the court to give such instructions is concerned; and therefore it is fatally defective, and will not authorize us to consider and dispose of the points based thereon presented by counsel for plaintiff in error.
We deem it proper to refer to the fact, shown by the record, that after the jury had returned its findings on the issues submitted the court inquired of the plaintiff in error if he, under the terms of the order of the court theretofore entered, desired to try before the court and jury any separate issue upon his own title, and that he refused to tender such issue. The judgment complained of was then entered, and, as we find no error, the same is affirmed.